# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### MIAMI DIVISION
### CASE NO. 22-21732-CIV-MORENO/GOODMAN

FERNANDO SIERRA,

      Plaintiff,

v.

RHINO CONTAINERS LLC and
WILFRED TEJEDA, SR.,

      Defendants.

_____/

## REPORT AND RECOMMENDATIONS ON PLAINTIFF'S SUMMARY JUDGMENT MOTION

In this Fair Labor Standards Act ("FLSA") case, Plaintiff alleges that he was employed by Defendants Rhino Containers ("Rhino") and Rhino's owner, Wilfredo Tejeda, Sr. ("Tejeda"), where he worked between 30-70 hours per work week and did not receive his full pay, nor was he properly paid time and a half for any of his hours over 40 hours in a work week. [ECF No. 1]. Plaintiff filed a Partial Summary Judgment Motion, arguing that he is entitled to a favorable ruling on all issues related to liability, as well as a favorable ruling that Defendants did not act in good faith. [ECF No. 32]. Defendants filed a response [ECF No. 49] and Plaintiff filed an optional reply [ECF No. 54].

United States Senior District Court Judge Federico A. Moreno referred to the Undersigned all pretrial matters. [ECF No. 50].

For the reasons discussed below, the Undersigned **respectfully recommends** that the District Court **grant in small part** and **deny in large part** Plaintiff's motion.

## A.   Factual Background

Plaintiff submitted a statement of material facts [ECF No. 33]. Defendants submitted a response to Plaintiff's statement of material facts. [ECF No. 48].

Defendants included in their response to Plaintiff's statement of material facts five "additional facts," as permitted by Southern District of Florida Local Rule 56.1(a)(2). Plaintiff failed to respond to Defendants' additional facts, as *required* by the Local Rules. *See* S.D. Fla. L.R. 56.1(a)(3) ("The movant *shall* respond to any additional facts asserted in the opponent's Statement of Material Facts even if the movant does not serve a reply memorandum." (emphasis added)). Therefore, the Undersigned treats all of Defendants' additional facts as undisputed.

The facts outlined below are generated, in part, from the paragraphs in Plaintiff's statement of facts and Defendants' additional facts. The Undersigned will retain the paragraph numbering used by Plaintiff and Defendants in their memoranda.

The Undersigned sometimes changed the wording of an undisputed fact for stylistic and/or grammatical purposes. In addition, to enhance readability, I removed the specific record citations. They can be found in the source document, if needed.

Defendants disputed 14 of Plaintiff's 29 facts. As will be discussed below, nearly all of these disputes are well-taken. The majority of Defendants' disputes, however, do

not involve a citation to record evidence which contradicts Plaintiff's cited evidence. Rather, the disputes arise from Defendants' notation that the evidence Plaintiff cites simply does not support Plaintiff's fact.

A typical dispute in the summary judgment context arises when the two witnesses say under oath different things. For example, in a racial-discrimination lawsuit, the plaintiff may allege that his employer used racially inflammatory language when discussing his employment, which is evidence of discrimination. As support, the plaintiff might cite to his deposition, in which he testifies to that fact. The defendant-employer may dispute this fact and cite to his own deposition in which he testifies that he never used such language. Because both parties are citing to evidence which supports contradictory facts, then this would become a factual dispute.

This is **not** the type of dispute which frequently occurs in the instant case.

For example, in paragraph 21, Plaintiff alleges the following fact:

21. Plaintiff's schedule was controlled and determined at Tejeda's discretion. Tejeda Dep. 66:3-5. Defendants used Plaintiff's services a lot since he [sic] did not have enough employees and it was cheaper. Tejeda Dep. 64:17-18. Plaintiff would meet with Tejeda to discuss the projects that he was assigned, and Tejeda provided all the tools necessary. Tejeda Dep. 56:24-57:13.

This "fact" is based on the following deposition testimony from Tejada:

P. 66: 3-5
Q. Do you have any knowledge as to how often that Mr. Sierra performed work for Rhino?

A. Of course. I distribute all the jobs.

P. 64: 17-18
A. I used [Mr. Sierra's] services a lot.

Pp. 56:24 - 57:13
Q. Did Rhino set Mr. Sierra's work schedule or hours?

A. No, not at all.

Q. How would Mr. Sierra know where to go and when?

A. He would come and he would learn about the project. We would have a meeting. I would tell him when the project [sic]. If it was convenient for him, he would take it or not.

Q. Was he required to provide you with progress or updates? Progress?

A. No, I would only ask him to let me know when he would finish the job and then when he finished[,] the client would come call me and tell me if he was okay with it.

Defendants' dispute is well taken because there is no reference in the testimony to Tejada using Plaintiff's services "since he did not have enough employees and it was cheaper," or to Plaintiff's statement that "Tejeda provided all the tools necessary." Moreover, the testimony Plaintiff cites directly contradicts his claim that his "schedule was controlled and determined at Tejeda's discretion."

<u>Statement of Facts</u>

1.      Defendant, Rhino Containers, LLC ("Rhino"), is a Florida corporation organized and existing under and by virtue of the laws of Florida and registered to do business within Florida since July 8, 2016.

2.      At all relevant times, Rhino is and was a company that manufactures, sells,

repairs, and installs containers and equipment, such as steel containers and components, trailer equipment, compactors, and hoppers, for a variety of large commercial and industrial organizations in the recycling and waste industries in and outside of the United States.

3.    Rhino manufactures containers for neighboring Caribbean islands, including the Dominican Republic, Haiti, Honduras, Jamaica, Nicaragua, Puerto Rico, the Virgin Islands, and more.

4.    Rhino's warehouse and principal place of business is located at 3525 NW 107th Street, Miami, FL 33167.

5.    *Disputed.* [Plaintiff's citation does not support the fact.].

6.    *Disputed.* [Plaintiff's citation does not support the fact.].

7.    Rhino also offers mobile services and provides custom installation throughout the tri-county area, including Miami Dade, Broward, and Palm Beach. [The remainder of Plaintiff's fact is disputed and unsupported by any cited evidence.].

8.    Rhino's operating hours were at Tejeda's discretion. During the high season, Rhino's hours are regularly Monday through Friday, from 6:00 AM to 3:30 PM, and Monday through Friday, from 6:00 AM to 2:30 PM, during the low season.

9.    For 2020, Rhino had a gross revenue of $854,252. Rhino reported purchasing hydraulic shear equipment and other Millerwelds tools which are manufactured outside of Florida.

10.     Although Rhino has not completed its taxes for the 2021 tax year, Rhino has conceded that its gross revenue was more than $500,000.

11.     *Disputed.* [Defendants cite to contradictory evidence and Plaintiff's citation does not fully support the fact.].

12.     In 2020, Rhino had a total of 23 employees. During that year, at least two (2) to three (3) of these employees worked in the warehouse as welders and/or assemblers.

13.     In 2021, Defendants had a total of 43 employees. Some of the employees worked as little as one day, one month, or three months.

14.     Tejada is the sole corporate officer, manager, registered agent, and owner of Rhino.

15.     Tejeda supervised and controlled the day-to-day operations of Rhino.

16.     Tejeda is the only person who has the authority to hire and fire employees, and independent contractors. He also handled customers' requests, schedules, and assignment of the work to employees and independent contractors.

17.     Tejeda was responsible for deciding whether an individual is hired and, if so, in which capacity: as an employee or an independent contractor. He was the only person authorized to do so. He was then responsible for ensuring that all applicable paperwork was completed. [The remainder of Plaintiff's fact is disputed and unsupported by any cited evidence.].

18.     Plaintiff was introduced to the Defendants by Eduardo Sanchez

("Sanchez"), a former employee of Rhino who, at the time, was performing work for Defendants as an independent contractor under his own company (GS Iron Construction & Welding).

19.     Defendants hired Plaintiff as an independent contractor to perform work for the benefit of Defendants. [The remainder of this fact is disputed.].

20.     Plaintiff cleaned on-site, completed machine installation, and, at Tejeda's direction, would perform maintenance on products at Defendants' customer's location. [The Undersigned edited this fact to reflect Defendants' dispute.].

21.      *Disputed.* [Plaintiff's citation does not support the fact.].

22.     *Disputed.* [Defendants cite to contradictory evidence and Plaintiff's citation references evidence in a foreign language with no certified translation.].

23.     Defendants required Plaintiff to report to Tejeda when Plaintiff would complete a job. Upon confirming that the client was satisfied, Tejeda would instruct his bookkeeper, Jorge, and later Dayana Delgado to issue payment for services rendered.

24.     Jorge would make the payments for the amounts authorized by Tejeda and Dayana would sign the check.

25.     *Disputed.* [Plaintiff's citation does not support the fact.].

26.     *Disputed.* [Plaintiff's citation does not support the fact.].

27.     *Disputed.* [Plaintiff's citation does not support the fact.].

28.     *Disputed.* [Plaintiff's citation does not support the fact.].

29.    *Disputed.* [Plaintiff's citation does not support the fact.].

Defendants' Additional Facts

30.    Plaintiff was an independent contractor who provided services to Defendants through his company, FMS Eagle Corp. Plaintiff, at his discretion and under his own supervision, would provide cleaning, maintenance, and/or repair services to Defendants' customers.

31.    Plaintiff was not a welder and did not work in Defendants' warehouse assembling containers. All the welders who work in Defendants' warehouse are employees of Rhino.

32.    Plaintiff was compensated for his services, through his company, on a per-job or per-project basis.

33.    Plaintiff used his own tools and materials to complete the work he accepted from Defendants.

34.    Rhino did not require Plaintiff to be the person to perform the services his company was retained to perform.

## II.    Legal Standard

### A.    Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a

judgment as a matter of law." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (citation omitted). Thus, the Court may enter summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The moving party must "show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). If the movant does so, then "the burden shift[s] to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Id.* A genuine factual dispute exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1358 (11th Cir. 1999). The opposing party must proffer more than "a mere scintilla of evidence" to show "that the jury could reasonably find for that party." *Abbes v. Embraer Servs., Inc.*, 195 F. App'x 898, 899-900 (11th Cir. 2006) (internal quotations omitted).

When deciding whether summary judgment is appropriate, the Court views all facts and resolves all doubts in favor of the nonmoving party. *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1247 (11th Cir. 2013). This means that the Court must draw all inferences in favor of the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007); *Tana v. Dantanna's*, 611 F.3d 767, 772 (11th Cir. 2010).

Summary judgment "may be inappropriate where the parties agree on the basic facts, but disagree about the factual inferences that should be drawn from these facts." *Warrior Tombigbee Transp. Co. v. M/V Nan Fung*, 695 F.2d 1294, 1296 (11th Cir. 1983). "If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the [C]ourt should not grant summary judgment." *Allen v. Bd. of Pub. Educ., Bibb Cnty.*, 495 F.3d 1306, 1315 (11th Cir. 2007).

## III.   Analysis

Plaintiff contends that he is entitled to summary judgment on the following issues: (1) Rhino is a covered enterprise subject to the FLSA; (2) Tejeda is an employer within the meaning of the FLSA; (3) Plaintiff was an employee of Defendants, not an independent contractor; and (4) Defendants' violations of the FLSA were willful. [ECF No. 32]. Defendants concede the first two issues but argue that factual disputes preclude summary judgment on the third issue and because the third issue requires a trial, Plaintiff is also not entitled to summary judgment on the issue of willfulness.

"To determine whether an individual falls into the category of covered 'employee' or exempted 'independent contractor,' courts look to the 'economic reality' of the relationship between the alleged employee and alleged employer and whether that relationship demonstrates dependence." *Scantland v. Jeffry Knight, Inc.*, 721 F.3d 1308, 1311 (11th Cir. 2013). In determining whether an individual is an employee based on the

"economic reality" of the relationship, courts have developed a non-exhaustive multifactor test:

(1) the nature and degree of the alleged employer's control as to the manner in which the work is to be performed;

(2) the alleged employee's opportunity for profit or loss depending upon his managerial skill;

(3) the alleged employee's investment in equipment or materials required for his task, or his employment of workers;

(4) whether the service rendered requires a special skill;

(5) the degree of permanency and duration of the working relationship;

(6) the extent to which the service rendered is an integral part of the alleged employer's business.

*Id.* at 1312.

No factor is determinative; the "tests are aids — tools to be used to gauge the degree of dependence of alleged employees on the business with which they are connected. It is dependence that indicates employee status." *Usery v. Pilgrim Equip. Co.*, 527 F.2d 1308, 1311 (5th Cir. 1976).[1]

Plaintiff admits that there are several factual disputes over "Plaintiff's schedule," the "type of work" Plaintiff performed, and whether Plaintiff was compensated on an hourly or per job basis. Nonetheless, Plaintiff urges that the undisputed evidence

---

[1]     The Eleventh Circuit has adopted, as binding precedent, all decisions of the former Fifth Circuit handed down prior to close of business on September 30, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc).

establishes that Plaintiff was "economically dependent upon Defendants." Despite these admitted factual disputes, Plaintiff argues that each of the six factors weigh in his favor.

Defendants argue that the well-taken factual disputes preclude summary judgment and that none of the factors fall in Plaintiff's favor at this stage. In Defendants' view, Plaintiff's arguments are mere legal conclusions and Plaintiff misstates several allegedly undisputed facts.

The Undersigned will address each of the factors in turn.

**A.    Degree of Defendants' Control Over the Manner in Which Plaintiff's Work was Performed**

Plaintiff argues that this element is met because the undisputed facts establish that Tejeda "managed the work that Plaintiff performed on any given day" and "Tejeda would meet with Plaintiff at the warehouse to discuss the project that he would be assigned by Tejeda." Defendants say that the testimony on which Plaintiff relies does not support Plaintiff's position and accuse Plaintiff of "grossly mistat[ing] and embellish[ing] the testimony of Tejeda." [ECF No. 49].

"Control arises when the purported employer goes beyond general instructions and begins to assign specific tasks, to assign specific workers, or to take an overly active role in the oversight of the work." *Dimingo v. Midnight Xpress, Inc.*, 325 F. Supp. 3d 1299, 1311 (S.D. Fla. 2018) (quoting *Diego v. Victory Lab, Inc.*, 282 F.Supp.3d 1275, 1280 (S.D. Fla. 2017)). This type of control exists where a worker is unable to "determine his own hours, modify his billing practices, work for other companies, or decline an assignment." *Yilmaz*

*v. Mann*, No. 13-80351-CV, 2014 WL 1018006, at *4 (S.D. Fla. Mar. 17, 2014).

Although Plaintiff correctly cites the standard applied in evaluating this factor, his factual analysis offers little substance.[2] Moreover, the record citations which Plaintiff provides as evidentiary support for his "facts" actually undermine his contention. Although Plaintiff says that Tejeda "managed the work that Plaintiff performed on any given day," the deposition exchange upon which this argument is based reveals the following:

Q. Did Rhino set Mr. Sierra's work schedule or hours?

A. No, not at all.

Q. How would Mr. Sierra know where to go and when?

A. He would come and he would learn about the project. We would have a meeting. I would tell him when the project [sic]. If it was convenient for him, he would take it or not.

Q. Was he required to provide you with progress or updates? Progress?

---

[2]    In his reply, Plaintiff references a portion of his deposition testimony as evidence that he "was sometimes required to work late" and "did not have the ability to turn down assignments" or "leave before his eight-hour shift." [ECF No. 54]. This argument was not made in his initial motion, nor was this fact included in Plaintiff's statement of material facts. Therefore, the Undersigned will not consider the testimony. *See Pinnacle Advert. & Mktg. Grp., Inc. v. Pinnacle Advert. & Mktg. Grp.*, LLC, No. 18-CV-81606, 2019 WL 4739399, at *2 (S.D. Fla. Sept. 6, 2019) ("As an initial matter, [the] [p]laintiff argues that [the] [d]efendant improperly relies and cites additional evidence in support of its motion that has not been included in the [s]tatement of [u]ndisputed [f]acts; and, therefore I should not consider the additional evidence when deciding the [m]otion. . . . I agree, as Local Rule 56.1 requires me to only consider the undisputed material facts in determining whether the movant is entitled to summary judgment." (citing S.D. Fla. L.R. 56.1; *Int'l Fidelity Ins. Co. v. Noyes Constr., Inc.*, No. 17-cv-80937-DMM, DE 51 at 9 (S.D. Fla. Apr. 17, 2018)).

A. No, I would only ask him to let me know when he would finish the job and then when he finished[,] the client would come call me and tell me if he was okay with it.

Based on Tejeda's testimony, the only "management" which occurred was the initial presentation of a potential job to Plaintiff. If this were all that were required, then this factor would always fall in favor of finding an "employee" relationship. It is hard to imagine a situation where an independent contractor would not have to be informed of the nature and requirements of a job before accepting the job.

Because the undisputed facts do not establish that Defendants controlled Plaintiff's hours, controlled the manner in which he performed his work, controlled whether he was the actual person who had to perform the work, or controlled whether he had to accept or decline any given assignment, this factor does not fall in Plaintiff's favor.

**B.    Opportunity for Profit or Loss**

Plaintiff argues that he was paid at a rate of $13.00 an hour. He says that because he was an hourly employee, his profit could not be increased through managerial skill. As support for this contention, Plaintiff cites to what he claims are "invoices that he received from *[Defendants]* along with each check which provide[s] a detailed breakdown of the number of hours Plaintiff was being compensated during the pay period."

As Defendants correctly note in their response to Plaintiff's statement of material facts, these invoices originated from Plaintiff's company, not from Defendants. [ECF No. 49]. Relying in part on the fact that Plaintiff's *company* created the invoices, Defendants

dispute that the payments necessarily went to Plaintiff and argue that Plaintiff's company was free to employ as many or as few workers (none of which had to be Plaintiff) as it desired to perform the assigned projects. [ECF No. 48, ¶ 34]. Further, Plaintiff's contention is directly contradicted by Tejeda's testimony that Plaintiff was paid on a "per job" or "per project" basis. [ECF No. 33-2, 55: 18-20].

When an alleged employee's opportunity for profit or loss depends on "managerial skills 'such as initiative, judgment and foresight,'" then the factor weighs in favor of finding that the alleged employee is an independent contractor. *Dimingo*, 325 F. Supp. 3d at 1312 (quoting *Artola v. MRC Express, Inc.*, No. 14-CV-23219, 2015 WL 12672722, at *7 (S.D. Fla. Sept. 25, 2015)). In evaluating this factor, the court should examine whether the plaintiff is "able to increase his opportunities for profit with the [d]efendants rather than on his own." *Id.*

Here, Defendants have presented evidence that Plaintiff was able to negotiate with Defendants the amount that he was to be paid for each job. [ECF No. 48, ¶ 17]. Because there is a factual dispute over this factor's core inquiry, it does not fall in Plaintiff's favor for summary judgment purposes.

### C. Investment

"Courts may find independent contractor status when a worker invests in equipment or materials required for completing his tasks, or hires other workers to assist him in the completion of his tasks." *Maldonado v. Callahan's Express Delivery, Inc.*, No. 8:13-

CV-292-T-33AEP, 2018 WL 398724, at *5 (M.D. Fla. Jan. 12, 2018). Plaintiff claims that he "did not make any financial investment in the work performed for the benefit of [Defendants]." [ECF No. 32]. He says that any attempt by Defendants to aver that Plaintiff "provide[d] his own tools" is "misconstruing [ ] reality" and "Tejeda's deposition indicates that Defendants purchased and provided, at the very least, the machinery and tools necessary to perform the manufacturing and maintenance of its containers." *Id.* (citing [ECF No. 33, ¶¶ 19, 21]).

However, consistent with the citation problem the Undersigned identified earlier, the deposition excerpts which Plaintiff cites as support for his sweeping proclamations do not support his contentions. As support for paragraph 21 of Plaintiff's statement of material facts (concerning Plaintiff's allegation that Defendants provided the necessary tools), which states, in part, that "Tejeda provided all the tools necessary," he relies on the following testimony from Tejeda's deposition:

Q. Did Rhino set Mr. Sierra's work schedule or hours?

A. No, not at all.

Q. How would Mr. Sierra know where to go and when?

A. He would come and he would learn about the project. We would have a meeting. I would tell him when the project [sic]. If it was convenient for him, he would take it or not.

Q. Was he required to provide you with progress or updates? Progress?

A. No, I would only ask him to let me know when he would finish the job and then when he finished[,] the client would come call me and tell me if

he was okay with it.

[ECF No. 33-2, pp. 56:25-57:13].

Because Plaintiff has failed to present competent evidence that Defendants provided him with tools and Defendants point to affirmative record evidence which contradicts Plaintiff's attorney rhetoric, *see* [ECF No. 33-2, pp. 59: 21-25 ("[Q]. Did Rhino issue [Plaintiff] any property, any property like tools or anything like that to complete the work that he was sent to? Did he provide -- did he provide any tools? A. No.)], this factor does not fall in Plaintiff's favor for summary judgment purposes.

### D.    Special Skill

Plaintiff says that he "essentially was a laborer and did not engage in a specialized job which required additional training." [ECF No. 32]. Defendants say that this argument is hypocritical because Plaintiff testified in his deposition that he did welding for Defendants and had to learn how to weld in order to perform the work. [ECF No. 49]. But Defendants later say that they are "not argu[ing] that Plaintiff possessed special skill or knowledge to perform the various services his company was hired to provide." *Id.*

Because Defendants are not disputing this element, the Undersigned will treat it as falling in Plaintiff's favor.[3]

---

[3]    Plaintiff, through his counsel -- as officers of the Court-- affirmatively asserts in his motion that he "was a laborer and did not engage in a specialized job which required additional training." [ECF No. 32]. It will be concerning to the Court if Plaintiff were to shift course and advance a future argument during a trial or hearing that he performed welding for Defendants -- a task which requires a special skill and training -- having

E.     **Permanence and Duration**

"The fifth factor considers the degree of permanency and duration of the working relationship." *Scantland*, 721 F.3d at 1318. When evaluating this factor, "[e]xclusivity is relevant." *Id.* In his motion, Plaintiff claims that this factor "points strongly toward employee status" because "Plaintiff continuously worked for Defendants for almost a year . . ., had no other job and was completely economically dependent on Defendants." [ECF No 32]. Defendants do not dispute that Plaintiff worked for them for nearly a year, but argue that "[his] services were occasional, not continuous" and "Plaintiff was able to refuse jobs offered to his company . . . [and free] to provide services to other companies." [ECF No. 49]. In Defendants' view, Plaintiff's entire argument on this issue is his self-serving testimony.

Other courts have found that "a working relationship of less than one year is transient or itinerant and signal[s] independent contractor status." *Maldonado*, 2018 WL 398724, at *6 (internal quotations omitted); *see also Chavez v. Arancedo*, No. 17-20003-CIV, 2018 WL 4610564, at *4 (S.D. Fla. Sept. 24, 2018); *Clincy v. Galardi S. Enterprises, Inc.*, 808 F. Supp. 2d 1326, 1348 (N.D. Ga. 2011).

Further, there are obvious factual disputes which exist over how frequently Plaintiff performed work for Defendants and whether Plaintiff was permitted to seek

---

already advanced to the Court the argument that he possesses no such skill (because the argument benefits him on *this* element).

work from other companies while working for Defendants.

Accordingly, because the duration of Plaintiff's employment is insufficient to satisfy the durational aspect of this factor and factual disputes exist in the other areas, this factor does not now fall in Plaintiff's favor for summary judgment purposes.

F.      **Integral Part of Business**

Plaintiff says that "it is irrefutable that the work performed by Plaintiff was an integral part of Defendants' business" and "[i]t simply contradicts logic to claim that a company whose sole purpose is to manufacture containers can exist without those individuals that actually do the manufacturing work." [ECF No. 32]. Plaintiff cites to no record evidence as support for his broad proclamation that Defendants "cannot deny this reality."

Defendants again accuse Plaintiff of making inconsistent arguments. Defendants maintain that Plaintiff had no role in performing any manufacturing work and was "merely a handyman, who's [sic] company assisted with machine installations, repairs, and cleanings for Defendant's [sic] customers. [ECF No. 49]. Plaintiff fails to meaningfully address this argument in his response and says that he "still had an integral role in that he was providing services either manufacturing or servicing the containers for [Defendants]." [ECF No. 54].

Not all labor, even if tied to the main operation of the business, will be considered an integral part of the business. *Stubbia v. Nopi Enters., Inc.*, No. 12-22089-CIV, 2013 WL

12101114, at *3 (S.D. Fla. Apr. 5, 2013) (finding that a factual dispute existed over whether the delivery of pizzas was integral to a pizza restaurant's business). "The relevant inquiry here considers the proportion of [the defendant's] business that is performed by [the plaintiff]." *Hughes v. Fam. Life Care, Inc.*, 117 F. Supp. 3d 1365, 1373 (N.D. Fla. 2015).

In both Plaintiff's motion and in his reply, he offers no analysis or insight into the significance of container repair to Defendants' business. Instead, Plaintiff's argument on this issue is limited to a conclusory statement that it is "irrefutable that the worked performed by Plaintiff was an integral part of Defendants' business." Such a threadbare argument is insufficient to warrant a finding that this factor falls in Plaintiff's favor for summary judgment purposes.

### G.      Conclusion

The undisputed facts, when viewed in the light most favorable to the non-moving party, establish that only a single factor -- lack of a special skill -- falls in favor of finding that Plaintiff was an employee. This is insufficient to support a summary judgment ruling in Plaintiff's favor. *Yilmaz*, 2014 WL 1018006, at *6 (denying the plaintiff's summary judgment motion when the only factor which fell in favor of finding he was an employee was whether the plaintiff's work was integral to the defendant's business); *Amponsah v. DirecTV, LLC*, 278 F. Supp. 3d 1352, 1362 (N.D. Ga. 2017) (factual disputes precluded summary judgment when "one factor favor[ed] employee status, one factor favor[ed] independent contractor status, [and] one factor weakly favor[ed] independent contractor

status"); *cf. Kinslow v. 5 Star Field Servs. Grp., LLC*, No. 1:19-CV-1605-MLB, 2021 WL 3493564, at *15 (N.D. Ga. Aug. 9, 2021) (denying the defendant's summary judgment motion when only one factor, viewing the facts in the light most favorable to the plaintiff, weighed in favor of independent contractor status).

Further, because Plaintiff is not entitled to a summary judgment ruling that he was an employee under the FLSA, he is also not entitled to a summary judgment ruling that Defendants acted in bad faith in treating him as an independent contractor. *Rodriguez v. Farm Stores Grocery, Inc.*, 518 F.3d 1259, 1272 (11th Cir. 2008) (an employer's burden to establish that it qualifies for safe harbor arises after a violation of the FLSA is proven).

## IV.      Conclusion

Defendants concede that Rhino is an enterprise under the FLSA and that Tejeda is an employer under the FLSA; therefore, the Undersigned respectfully recommends that the District Court **grant** Plaintiff's summary judgment motion on these two discrete elements. Because there are material facts in dispute, the Undersigned **respectfully recommends** that the District Court **deny** Plaintiff's request for summary judgment on the issue of whether Plaintiff was an employee or independent contractor. Finally, because Plaintiff is not entitled to summary judgment on the issue of liability, the Undersigned **respectfully recommends** that the District Court **deny** Plaintiff's request for summary judgment on the issue of good faith.

## V.      Objections

The parties will have 14 days from the date of being served with a copy of this Report and Recommendations within which to file written objections, if any, with the District Judge. Each party may file a response to the other party's objection within 14 days of the objection. Failure to file objections timely shall bar the parties from a de novo determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in the Report except upon grounds of plain error if necessary in the interests of justice. *See* 29 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1 (2016).

**RESPECTFULLY RECOMMENDED** in Chambers, Miami, Florida, on March 8, 2023.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**Copies furnished to**:
The Honorable Federico A. Moreno
All counsel of record