United States District Court
for the
Southern District of Florida

| | |
|---|---|
| Fernando Sierra, Plaintiff, ) | |
| ) | |
| v.  ) | Civil Action No. 22-21732-Civ-Scola |
| ) | |
| Rhino Containers, LLC and ) | |
| Wilfredo Tejeda, Sr., Defendants. ) | |

## Verdict and Order Following Non-Jury Trial

In this Fair Labor Standards Act ("FLSA") case, the Plaintiff Fernando Sierra ("Sierra") alleges that the Defendants Rhino Containers, LLC ("Rhino") and Rhino's owner, Wilfredo Tejeda, Sr. ("Tejeda"), owe him unpaid minimum wages and overtime wages from his time as their employee. Specifically, in his amended statement of claim, Sierra asserts that the Defendants owe him $25,462.00 in lost wages and unpaid overtime, including liquidated damages. (ECF No. 24.)

Previously, Sierra filed a motion for partial summary judgment, which was granted in part and denied in part. (ECF Nos. 57, 59.) Because the Defendants conceded that Rhino is an enterprise under the FLSA and that Tejeda is an employer under the FLSA, the Court granted summary judgment in favor of Sierra on these two elements. However, because there were material facts in disputes, the Court denied Sierra's request for summary judgment on the issue of whether Sierra was an employee or independent contractor. Finally, because Sierra was not entitled to summary judgment on the issue of liability, the Court denied his request for summary judgment on the issue of good faith.

On May 11, 2023, the Court granted the Defendants' counsels' motion to withdraw. (ECF No. 62.) Because a business entity is not permitted to proceed without counsel, and the Defendants did not obtain new counsel within the Court's stated deadline, default final judgment was entered against the Defendant Rhino Containers, LLC. (*See* ECF No. 71.)

The Court held a one-day, non-jury trial, on December 13, 2023. Prior to the trial, Sierra submitted proposed findings of fact and conclusions of law. Because Tejeda was appearing pro se, the Court did not require him or the parties to file any additional materials. The Court has carefully reviewed the parties' submissions, in addition to the trial testimony and evidence. After considering the credible testimony and evidence, and the applicable law, the Court finds that Sierra was an employee of the Defendants to whom the

protections of the FLSA applied and that the Defendants are liable to Sierra for $2,000 in unpaid minimum and overtime wages, $2,000 in liquidated damages, $25,000 in attorney's fees, and $2,369.50 in costs.

1. **Summary of the Testimony**

   A. **Fernando Sierra**

Sierra performed work for the benefit of Rhino Containers starting approximately 2 years ago and continuing working for approximately one year. Sierra was introduced to the Defendant Tejeda through one of Sierra's friends, Johnnie. Johnnie had heard through a Rhino employee, Eduard Sanchez, that there was an opening at the company. The Defendant Wilfredo Tejeda was the owner and boss of the company. Rhino constructs and repairs trash containers.

Sierra spoke with Tejeda about the job opening and Tejeda later called Sierra and offered him a position as a welder's assistant to be paid $13.00 per hour. Sierra had no prior experience in welding, which is why he started as an assistant welder.

Sierra filled out paperwork with Tejeda's wife, who worked as a secretary at the company. They kept the paperwork and did not give him a copy.

Sierra worked five days per week and sometimes six days per week. He worked seven to fifteen hours per day. In the winter he worked shorter days, and in the summer, he worked longer days. He sometimes worked overtime but only one or two hours. He generally worked 40 hours per week but sometimes worked 41 – 42 hours per week.

Sierra did not choose his schedule. Tejeda chose Sierra's schedule. Tejeda also set all the other employees' schedules. If Sierra or any other employees worked overtime, it was at the direction of Tejeda. In addition to giving instructions, Tejeda also performed some of the work tasks.

Sierra learned how to perform tasks at work through other co-workers, including Sanchez. He learned how to weld and eventually became a welder for the final four or five months of his employment.

Sierra always worked inside the Rhino warehouse.

Sierra's pay never increased; he was told it would be increased to $15.00 per hour, but the pay remained $13.00 his entire employment.

Any equipment that was used by Sierra was owned by Rhino and provided to him by Rhino.

Other employees punched in when they started and ended work but because Sierra was undocumented, he did not punch in.

Sierra was first paid in cash. Rhino would write a check to Sanchez's company and then Sanchez would pay Sierra in cash. Sierra was also given a piece of paper with his hours for the pay period written on it.

After approximately three months, Tejeda told Sierra to establish his corporation, and Tejeda referred Sierra to someone to help open the corporation. Once the corporation was opened, he started receiving his pay by check from Rhino to his corporation, FMS Eagle. FMS Eagle did not have a website or advertise or employ anyone else. FMS Eagle did not perform work for any other company until after Sierra left Rhino. Even after opening the corporation, Sierra continued to work as an assistant welder.

From the beginning of his employment, Sierra was always having problems getting paid in full. The pay he received did not match the hours that he worked. When Sierra complained to Tejeda, he would always say he would make up for it in the next pay period.

Sierra believes the entire amount he is owed for time he worked but was not paid is a little over $2,000.00.

At one point, Sierra testified that he was only underpaid while he was paid in cash. Later in his testimony, he said he was also underpaid during the time he was paid through his corporation by check. But Sierra could not estimate the total amount he believed he was underpaid during his entire employment.

Sierra introduced six checks in the amounts of $1,049.75 (9/23/21), $507 (10/20/21), $936 (11/16,21), $468 (12/1/21), $1,000 (12/22/21), and $1,000 (1/3/22) that were paid to his corporation. Although Sierra claims that he was underpaid even when he was paid by check, he could not provide even a ballpark estimate of how much he was underpaid.

### B. Wilfredo Tejeda

Tejeda is the owner and manager of Rhino Containers. Tejeda claims that he does not know a Johnnie, but that Sanchez did work for Rhino.

Tejeda admits that Rhino wrote a check to Sanchez's company, but he denies that it was to later be paid to Sierra in cash.

Tejeda denies ever paying Sierra or any other employee in cash. He claims he used a payroll company and paid all his employees by check, and they were provided with W-2 forms.

Tejeda claims that Sierra only worked for him for the four months encompassed by the six checks that Sierra received through his corporation.

Tejeda claims he hired Sierra as a favor to Sanchez since Sierra and Sanchez came from the same country. Tejeda knew Sierra was undocumented. Tejeda asked Sanchez, "what can Sierra do?", and Sanchez told him he

couldn't do anything. Tejeda said that when there were small jobs like cleaning a spill or sweeping, Tejeda would call him in to do those odd jobs. Tejeda told Sanchez to teach Sierra a skill because Tejeda did not want to spend time training him.

Tejeda admitted that Sierra used the equipment of Rhino during the time he worked there.

Sanchez was a W-2 employee during 2020 and 2021 according to the records of Rhino.

### 2. Findings of Fact

Resolution of the critical factual disputes in this trial necessarily required the Court to evaluate the credibility of Sierra and Tejeda. The main factual disputes are whether:

    a. Sierra worked for the Defendants as an employee, to whom the protections of the FLSA applied;
    b. the Defendants owe Sierra unpaid minimum wages;
    c. the Defendants owe Sierra overtime wages;
    d. the Defendants acted in good faith; and
    e. Sierra is entitled to attorney's fees.

On all these factual disputes, the Court accepts the testimony of Sierra as more credible and rejects the testimony of Tejeda as not credible, and, in particular, on the crucial issue of the status of their working relationship.

Rhino is a Florida corporation organized and existing under and by virtue of the laws of Florida and registered to do business within Florida since July 8, 2016. Rhino is and was—during all times material to the present suit—a company that manufactures, sells, repairs, and installs steel containers, container components, and related goods including trailer equipment, compactors, and hoppers for a variety of large commercial and industrial organizations in the recycling and waste industries both in and outside of the United States. Rhino offers mobile services and provides custom installation throughout the South Florida tri-county area of Miami-Dade, Broward, and Palm Beach.

Rhino's operating hours were set by the Defendant Tejeda. Tejada is the sole corporate officer, manager, registered agent, and owner of Rhino. Tejeda supervises and controls the day-to-day operations of Rhino. Tejeda is the only individual who possesses authority to hire and fire Rhino's employees and independent contractors. Tejeda schedules, supervises, and assigns the work of Rhino's employees and independent contractors.

Sierra performed work for the Defendants' benefit on a regular and continuous basis between February 2021 and December 2021. Throughout the

time that Sierra performed work for the Defendants, Tejeda supervised and instructed Sierra as he worked, determined Sierra's work schedule, possessed the power to hire and fire Sierra, and maintained control of Sierra's rate and method of payment. The Defendants provided Sierra with the tools, space, and materials necessary for carrying out his job duties for the Defendants. Sierra's opening role at Rhino was as a welder's assistant.

Sierra did not possess authority to turn down assignments, nor did he have the liberty to leave before completing an eight-hour shift. If Sierra was going to arrive late to work, he was required to inform the Defendants ahead of time. The Defendants decided the days and times that Sierra would work, required Sierra to report his working hours, and would reprimand Sierra for failing to work at the required times or on the required days.

Upon Sierra's hiring, Tejeda told Sierra that he would be compensated at a rate of $13.00 per hour. Sierra's rate of compensation was never changed.

At the beginning of his employment, Sierra was paid in cash because he was undocumented. At least once, he was paid in cash by a co-employee, Sanchez, after Rhino wrote a check to Sanchez's corporation in the amount of wages owed to Sierra. After being paid in cash for several months, Tejeda instructed Sierra to open a business entity to which the Defendants would issue compensation in exchange for the work that Sierra performed. Upon Tejeda's instruction, Sierra registered a business entity with the State of Florida, FMS Eagle Corp. ("FMS Eagle"), as a condition to continuing to work for the Defendants. Throughout the time that Sierra performed work for the Defendants, FMS Eagle did not employ any individuals. Additionally, Sierra did not perform work for any employer other than the Defendants during this time.

During the summer, Sierra usually worked 40 to 42 hours per week. Monday through Friday, Sierra typically arrived to work at 6:00 a.m., took a half-hour lunch break, and finished working between 2:30 p.m. and 5:00 p.m. The Defendants would sometimes require that Sierra also perform work on Saturday. During the winter, Sierra typically worked Monday through Friday beginning at 6:00 a.m., took a half-hour lunch-break, and finished working between 3:30 p.m. and 6:00 p.m. The Defendants would sometimes require that Sierra also perform work on Saturday.

The Defendants did not always issue payment in full for each workweek. For his work during the period of April 12, 2021, through December 17, 2021 (35 weeks), the Defendants issued Sierra only six (6) checks totaling $4,960.75. Throughout the course of Sierra's work for the Defendants, the Defendants did not compensate Sierra at a rate of at least one and one-half times Sierra's regular rate of pay for any of the hours that Sierra worked over 40 per workweek.

### 3. Conclusions of Law

As noted, it is undisputed that Rhino is a covered enterprise under the FLSA and that Tejeda is an employer under the FLSA, and the Court previously granted summary judgment in favor of Sierra on these two elements. (ECF Nos. 57, 59.)

### A. Employee or Independent Contractor

The protections of the FLSA apply only to "employees." *See* 29 U.S.C. §§ 206-07. The term "employee" does not include independent contractors. *See Scantland v. Jeffry Knight, Inc.*, 721 F.3d 1308, 1311 (11th Cir. 2013). Thus, independent contractors have no claim under the FLSA.

"To determine whether an individual falls into the category of covered 'employee' or exempted 'independent contractor,' courts look to the 'economic reality' of the relationship between the alleged employee and alleged employer and whether that relationship demonstrates dependence." *Scantland v. Jeffry Knight, Inc.*, 721 F.3d 1308, 1311 (11th Cir. 2013) (citing *Bartels v. Birmingham*, 332 U.S. 126, 130, 67 S. Ct. 1547, 1550 91 L. Ed. 1947, 1947-2 C.B. 174 (1947)). "The inquiry is not governed by the 'label' put on the relationship by the parties or the contract controlling that relationship, but rather focuses on whether 'the work done, in its essence, follows the usual path of an employee.'" *Id.* (quoting *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 729, 67 S. Ct. 1473, 91 L. Ed. 1772 (1947)); *see also McComb*, 331 U.S. at 729 ("[P]utting on an 'independent contractor' label does not take the worker from the protection of the Act.").

In determining whether an individual is an employee based on the "economic reality" of the relationship, courts have developed a non-exhaustive multifactor test:

> (1) the nature and degree of the alleged employer's control as to the manner in which the work is to be performed;
> (2) the alleged employee's opportunity for profit or loss depending upon his managerial skill;
> (3) the alleged employee's investment in equipment or materials required for his task, or his employment of workers;
> (4) whether the service rendered requires a special skill;
> (5) the degree of permanency and duration of the working relationship;

> (6) the extent to which the service rendered is an integral part of the alleged employer's business.

*Scantland*, 721 F.3d at 1312. "Ultimately, in considering economic dependence, the court focuses on whether an individual is 'in business for himself' or is 'dependent upon finding employment in the business of others.'" *Id.* (quoting *Mednick v. Albert Enters., Inc.*, 508 F.2d 297, 301-02 (5th Cir. 1975)).

The Court finds that Sierra was a non-exempt "employee" of Defendants as defined under the FLSA, 29 U.S.C. § 203. In this case, numerous factual findings weigh in favor of concluding that Sierra was an employee, including that: (i) the Defendants controlled what time Sierra went to work and whether he worked all day; (ii) the Defendants provided Sierra with the tools, space, and materials necessary to do his job; (iii) Sierra was unable to hire workers to help him; (iv) the skills involved in Sierra's job duties were simple enough to be learned by a few weeks of on-the-job training; and (v) the services that Sierra rendered were an integral part of the Defendants' business. Indeed, Sierra was economically dependent on Defendants and was an employee.

Thus, as Sierra's employer under the FLSA, the Defendants were obligated to pay Sierra at a rate no less than the applicable minimum wage for all hours he worked for the Defendants' benefit, 29 U.S.C. § 206, and at a rate of at least one and one-half times his regular rate of pay for all time worked in excess of forty (40) hours per workweek, 29 U.S.C. § 207(a)(1).

### B. Unpaid Minimum Wages and Unpaid Overtime

Under the FLSA, an employer must pay its employee a minimum wage. *See* 29 U.S.C. § 206(a). In addition, the FLSA generally requires employers to pay employees overtime compensation, at a rate not less than one and one-half times the regular rate, for any time worked in a workweek in excess of forty hours. *See* 29 U.S.C. § 207(a)(2)(C). To recover under the FLSA, Sierra is "simply" required to demonstrate "a failure to pay overtime compensation and/or minimum wages to covered employees and/or failure to keep payroll records in accordance with the Act." *See Sec'y of Labor v. Labbe*, 319 Fed. Appx. 761, 763 (11th Cir. 2008) (citing 29 U.S.C. §§ 206, 207, and 215(a)(2) and (5)).

Sierra does not have any time or pay records from the Defendants, so he based his calculations on his recollection of the dates and times worked and the pay he received for that work. Tejeda also failed to produce evidence on the precise amount of work performed by Sierra.

> An employee who brings suit under s 216(b) of the Act for unpaid minimum wages or unpaid overtime compensation, together with liquidated damages, has the burden of proving that she performed

> work for which she was not properly compensated. The remedial nature of this statute and the great public policy which it embodies, however, militate against making that burden an impossible hurdle for the employee. Due regard must be given to the fact that it is the employer who has the duty under s 211(c) of the Act to keep proper records of wages, hours and other conditions and practices of employment and who is in position to know and to produce the most probative facts concerning the nature and amount of work performed. Employees seldom keep such records themselves; even if they do, the records may be and frequently are untrustworthy. It is in this setting that a proper and fair standard must be erected for the employee to meet in carrying out her burden of proof.

*Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686-87, 66 S. Ct. 1187, 90 L. Ed. 1515 (1946).

Sierra testified to having suffered damages for unpaid minimum and overtime wages in the amount of approximately $2,000. The Court agrees that Sierra is entitled to damages for his unpaid minimum and overtime wages, and that the calculation of those damages need not be precise. Moreover, though it is possible that Tejeda's unpaid wages exceeded his in-court estimate of $2,000, the Court is constrained by Sierra's testimony on this point from awarding a higher amount.

Therefore, the Court awards damages to Sierra in the amount of $2,000, even though such amount may be only approximate. *See Anderson*, 328 U.S. at 687-88; *accord Donovan v. New Floridian Hotel, Inc.*, 676 F.2d 468, 471 (11th Cir. 1982).

### C. Liquidated Damages

The FLSA requires the doubling of an unpaid or underpaid overtime wage award unless the employer can successfully show good faith pursuant to 29 U.S.C. § 260. *See Rodriguez v. Farm Stores Grocery, Inc.*, 518 F.3d 1259, 1272 (11th Cir. 2008) ("Under the FLSA a district court generally must award a plaintiff liquidated damages that are equal in amount to actual damages."); *see also Dybach v. State of Fla. Dept. of Corr.*, 942 F.2d 1562, 1566-67 (11th Cir.1991). The employer carries the burden of proving its entitlement to the "safe harbor" provisions of the Portal-to-Portal Act. *See Joiner v. City of Macon*, 814 F.2d 1537, 1539 (11th Cir.1987).

Tejeda has not met his burden allowing the Court discretion on whether to award liquidated damages; therefore, the Court must award liquidated damages to Sierra in an amount equal to his unpaid minimum and overtime wages. *See, e.g., Joiner*, 814 F.2d at 1539 ("Thus, the district court's decision whether to award liquidated damages does not become discretionary until the

employer carries its burden of proving good faith."). Consequently, Sierra is entitled to recover an additional amount of $2,000 as liquidated damages.

### D. Attorney's Fees

The FLSA provides that, in addition to any judgment awarded to a plaintiff, a court shall allow reasonable attorney's fees and costs to be paid by the defendant. *See* 29 U.S.C. § 216(b). Because Sierra succeeded on his FLSA claims, he is entitled to payment for his reasonable attorney's fees and costs. *See P&K Rest. Enter., LLC v. Jackson*, 758 F. App'x 844, 850 (11th Cir. 2019) (explaining that prevailing FLSA plaintiffs are "automatically entitled" to attorney's fees).

At the end of the trial, Sierra's attorneys estimated their fees as $35,848, broken down as follows:
- Nathaly Saavedra, lead counsel – rate $350/hr X 77.28 hours = $27,048; and
- Patrick Brooks LaRou, junior counsel – rate $250/hr X 35.2 hours = $8,800.

After considering all the relevant factors, the Court awards Sierra **$25,000** in attorney's fees. Among other considerations, the Court finds $25,000 to be reasonable in light of the final damages recovered for Sierra. *See Walker v. Iron Sushi LLC*, 752 F. App'x 910, 916 (11th Cir. 2018) ("[I]t is entirely proper for the court to take into account the results achieved in setting the award.").

Finally, the Court also awards Sierra **$2,369.5** in costs, finding this amount to encompass all recoverable costs.

### 4. Conclusion

Accordingly, based on the foregoing findings of fact and conclusions of law, the Court concludes that Sierra is entitled to judgment against the Defendants in the following amounts:
- $2,000 in unpaid minimum and overtime wages;
- $2,000 in liquidated damages;
- $25,000 in attorney's fees;
- and $2,369.50 in costs.

**Done and ordered** at Miami, Florida on December 14, 2023.

_____
Robert N. Scola, Jr.
United States District Judge